Final case in our call this morning is agenda number 16, case number 108-910. Terry E. Reedy, Special Administrator, etc. Appellant v. United Flash Goedecke Service Inc. Appellee Counsel may proceed. May it please the court, Joseph A. Power Jr. along with my colleague Devin Bruce, we tried the case below and have been here once before as this court is aware. Your Honor, we would ask for the relief that this court reverse the appellate court and affirm the trial court. We believe that the appellate court exceeded the mandate of this court, which was to decide whether or not a 1204 instruction was appropriate. Instead, the appellate court reversed without visiting that issue and instead decided without determining whether the trial court abused her discretion that the case should be reversed and remanded for four items of evidence. We believe, Your Honor, as we state in our brief, that those items of evidence were either admitted or were never addressed at the trial court level. In particular, if you look at the three rules, two rules of this court, and that is Rule 239B regarding jury instructions, it requires that there need to be a factual or legal basis for the claim of either party for the basis of the reversal. And if you look at the instruction conference in particular, there's no mention of any evidentiary or legal basis, and in particular, we're talking about two jury instructions, Number 8 and Number 22 of the defendant. When plaintiff offered a 12, plaintiff's 1204 without the second paragraph, defendant just objected and said they had their own to offer. Never did they argue any of these four basis as a reason for getting the second paragraph in the 1204 instruction. They provided no case law, so specifically it violates the rule, Supreme Court Rule 239B, the Code of Civil Procedure 5-2-1202, and then in terms of post-trial motions, again, they do not cite any evidence or any law in their post-trial motion as to why this trial court should have granted their second paragraph in 1204. In particular, if you look at Paragraph 74, which we're regarding Defendant's Instruction Number 8, which is on Page 34 of their brief, there is no case law nor facts cited. If you look at Paragraph 84, which is Page 46 of their brief, that's Defendant's Instruction Number 22, no facts or case law cited. That specifically violates this court's decision in the Brown v. Decatur Memorial Hospital, and in Brown it talks a lot in particular about the trial court. The purpose of a post-trial motion is to allow the trial court, not in the heat of battle in a trial, but in the quiet of her chambers to review his or her decisions, and it gives three reasons for that. The first is that it allows to review the decision in the quiet of the chambers. Second, it affords an adequate opportunity to assess the allegedly erroneous rulings. And it says the third reason is mere general objections and subsequently raising appellate arguments, which the trial judge was never given an opportunity to consider, is unfair and violates not only the two rules of the Supreme Court, but also violates the rule of post-trial motion 366. B-2-3, which says in particular that a party may not urge as error on review of the ruling of the party's post-trial motion any point, ground, or relief not specified in the motion. So if you look at the two instructions they talk about, know whether they specify any law or any evidence that would have entitled them to either of these instructions. And if you look at the trial court below, anywhere there's an argument about sole proximate cause, nowhere do they discuss barricading, external crane, do they discuss signaling, do they talk about the tugger bay, nowhere. In particular, if you look at motions in limine in this court, the only thing they raise in the motions in limine is radios, the issue about radios. They said Midwest could have provided more radios, and yet they don't even put that in their post-trial motion. So, and in fact, there was no witness to talk about that. They're all expert. Now, if you look at the cases that are decided by the defendant in this case, they're all about experts. You know, an expert, a plaintiff's expert, testifies in a particular case, like the Petrie case, and then parties settle out, and then the trial court does not allow cross-examination regarding the criticisms of settling parties. So there was evidence in the case. In the Nolan case, in the Leonardi case, there's evidence in this case. In Leonardi, it had to do with an attending physician who died and his estate settled out, told a resident, do not operate on that mother, perform a C-section, because I'm on my way. So that went to sole proximate cause. In the Nolan case, the Nolan case, there was plenty of evidence, not only expert testimony, but the child of the decedent testified that we have plenty of exposures on other jobs. There was competent evidence in all those cases, in the McDonald case. We have a... But isn't the argument, I mean, isn't it here that the defendant says they were precluded from making any reference to sole proximate cause, and that they've been, that basically, regardless of whether you agree over what will eventually come in or not come in, the trial court ought to take a fresh look at the evidence in light of the court's ruling that the defendant is not a sole proximate cause. And that sole proximate cause is a valid defense. Well, no, sole proximate cause was always a valid defense, and the Leonardi case points that out, before the Nolan case. But in this particular case, in the trial court below, never did they argue any of these items of evidence going to the issue of sole proximate cause. Look throughout the whole brief. Look at their motion for a directive verdict. Are you arguing forfeiture, Mr. Pollack? Yes, Your Honor, I'm arguing waiver. Yes, they absolutely waived it, Your Honor, that they waived the issue of sole proximate cause because they violated not only at the instruction conference, they never specified any legal or factual basis for getting those two jury instructions, but then on post-trial motion. They didn't argue that basis. And if you look at the paragraphs on post-trial motion where they talk about blocking or barricading, all right, that's paragraph 11. If you look at paragraph 12, that's operation of the chugger. Paragraph 13, failure to provide an external crane. Paragraph 28, that's on providing an external crane. If you look at paragraph 37, which they talk about Mr. Penega, and if you look at paragraph 38, they talk again about Mr. Penega. They always said it went to the contributory negligence of the plaintiff or it went to the due diligence. They never say any of that evidence went to the issue of sole proximate cause, period. They never advance that argument in the trial court. And it's about fairness, not only to the plaintiff, to the widow and the children, but it's a fairness to the trial judge. You have to allow that trial judge to address these issues. And they didn't. They never are. And that's correct, Your Honor, because all the evidence was allowed in against Mr. Reedy that, you know, he shouldn't they said he shouldn't have been in the chugger bay. They actually said that Mr. Thomas claimed that he said, oh, we shouldn't be in the chugger bay. We better back up. You know, Barnett said the opposite. Well, Barnett did. Their own experts said Mr. Reedy had to be in the chugger bay in order to give the signals to the chugger. Because if you absolutely remove yourself from the chugger bay, you couldn't signal the operator. But now they were saying he shouldn't be. And they cross examined witnesses, Mr. Panaga, Mr. Jaginski, the chugger operator, saying it's preferable to be above. All right, that it's preferable. Sure, it's preferable to be there. But if he were above working next to the chugger operator, he would not be able to assist them by getting this truss, which is 25 foot long. And in order to get through the second and third floor, he had to operate the tag line because it was narrow at this point. So he was under there with the tag line, operating it to help steer it through the pipes so then they can take it up to the A4. So he needed to be below. Someone needed to be below to help them in terms of operating the tag line to get these items up the chugger bay. But if you look at any of these issues below before the trial cut, and I'll tell you clearly, the only bit of evidence that was ever argued in motions in limine, and that's motions in limine. We're not talking about instruction conference or post-trial motion. We're talking about motions in limine. That had to do with the radios, and that is not in the post-trial motion, so they don't even get into radios in their post-trial motion. And I said it before, and we said it again in brief, this was all an afterthought because everybody's thinking of 2-1117. And so proximate cause, I mean, there were so many admissions. This was their equipment. This was their, these were their chokers. These were their trusses. The subcontract, which they talk about erroneously because the subcontract nor the bid were offered in evidence at any time. At any time. So when they say the trial court erroneously excluded the subcontractor, there's no citation of the record because it was never offered in evidence. When they say the Midwest safety manual was erroneously excluded by the trial judge, again, incorrect. It was never offered in evidence. The only time the safety rules of Midwest were discussed, the only time in the trial was with Mr. Penega, and Mr. Penega testified in direct exam, didn't touch the rules. On cross-exam, Mr. Patton brought out, at the end of his cross-exam, that wasn't Mr. Veridi violating the rules by being underneath these trusses. And so Mr. Penega said, well, if he didn't need to be. And then Mr. Bruce, who asked on redirect, brought that out. He said that the rule specifically says that you're not supposed to be under moving materials unless your job requires it, which his job required it. That's the only rule. Now, the only time then thereafter in an offer of proof with Mr. Penega that they even bring up these safety rules is on a so-called offer of proof with Mr. Penega, and he asked Mr. Penega about these. And Mr. Penega said, you know, I don't know about Mr. Veridi's experience in tugger bays. I know about my own. It's limited. We never lifted any material like this. But he said in particular on the other rules, I don't know what applies, but in particular on their lift with their equipment, their rules apply, not our rules apply. All right. They never offered any. You can't just say I marked his Exhibit 1A, I marked it as our exhibit. They marked the rules as Exhibit 1A in our case. So if they're going to offer an evidence, they have to wait to the defense case and put it on. Now, the judge ruled in this offer of proof, you're getting well beyond what we're talking about. You're saying they open the door. The door was open in respect to one rule, not the whole rule book. And she specifically asked Mr. Patton, are you talking about you're marking 1A all the rules? He said, I am. She said, well, I think you're well beyond the scope. We're just talking about one rule that he opened the door to. Now, when it came to defense cases, they never offered these rules, not only in the evidence. They never had an offer of proof. They never brought Mr. Panega back to talk about the rules. You know what? When we get to the bottom line, they didn't even give the rule book to their own expert. And as this court's aware, most of the cases before this court involved excluding evidence from an expert, whether plaintiff or defense expert, whatever it is. They didn't even provide this rule book, which they claim the court erroneously declined to put in evidence. They never not only didn't offer it in evidence, they didn't even give it to their expert. They didn't have one witness that would offer or lay a foundation to get these other rules and evidence. Never. Look at their case. They didn't give it to Mr. Barnett. They had no other employee of Midwest that they put on in their case. So they have absolutely no record on this. These rules, which they say the court erroneously declined in evidence, were never offered in evidence. Were never offered in evidence. The only time they're referenced, even in a post-trial, is with Mr. Panega, and that's in our case. In their offer of proof, the judge would say you're beyond the scope of the direct and cross-exam talking about other rules dealing with barricading and blocking or whatever. And then if you look at their post-trial motion, or you look at anything in this record, because this court would have to search the whole record, nowhere do they identify what rules they're talking about. What rule are we talking about? What is a barricading, blocking rule, whatever these rules are? Nowhere, anywhere do they discuss these rules in particular or what we're talking about. And clearly the judge didn't abuse her discretion because she never ruled on whether any of these other rules are admissible or not. So the appellate court missed the boat when it said that the evidence that could have supported the instruction was erroneously excluded. Absolutely. And most importantly, Your Honor, it's not in the record, nor did they dissect it and decide did the trial judge abuse her discretion in not, number one, giving the instruction, but did the trial court abuse her discretion in excluding evidence because the evidence was never offered. So the trial court bypassed that, never ruled on it, because it's abuse of discretion standard. So the appellate court would need to have looked at each of the items of evidence and decide whether or not there was abuse of discretion. And there was not. It was never ruled on. And specifically, all the rules of this court dealing with the specificity of jury instructions and post-trial motions were violated. And if you want to get to the external crane, the subcontract, that was never offered in evidence by either party. The contract between BMW and Midwest was never offered in evidence. The subcontract between United Gedecky and BMW was never offered in evidence. The bid proposal was never offered in evidence. It's attached to the end of their brief. But try and find where it was ever offered in evidence. It never was offered in evidence. And if you look at the meaning of the subcontract within the four corners of the subcontract, it says United Gedecky is to provide the equipment, the labor, the material, the tools. That's what it says. And then it does say in Exhibit C, which is a bid proposal that was entered into in November with Jeffrey Talley, it says in the bid proposal there's a crane to be provided. Well, if you look at a crane, now there's what's called an external crane. And if I would get to that, because we don't have all the pages on our reply brief, page two, line two, we should refer to Mr. Jim Talley's testimony, which is pages in the record C-1534 to C-1537. We only call it C-1535. So it should be all four of those pages where Jim Talley, the fellow who had the boots on the ground, he's the brother of Jeff Talley. Jeff Talley's the superintendent who went and talked and was involved in the bid in November. We're talking December now with the subcontract. And in here, Jim Talley, the person boots on the ground, in his deposition he talks about we never talked about an external crane. Secondly, we couldn't have used an external crane. And why couldn't they? Because they needed these trusses on the eighth floor to build out to the wall to bring the piping in. There was nothing there. They couldn't get to the eighth floor and get over. They couldn't use the external crane because they couldn't get over to the wall. So he testified in his death. This is the person who's out there who's the designated safety person. He said we couldn't have used the external crane at this time. Basically, I don't know what my brother's talking about. That's what he's saying. But in reference to the external crane, there's no law for a proof. There's no argument below on this matter. You know, Mr. Barnett said an external crane would be speculative to say an external crane would have made any difference. They didn't even discuss it or argue it in the instruction conference or in their post-trial motion that the external crane went to sole proximate cause. But as importantly, it couldn't have been used. If you believe Jim Talley, who's the foreman designated safety person who's working there, he claims we never discussed external crane. Never at all. And I know they want to now for the first time suggest that. Mr. Power, what's the issue before this court on this case? Your Honor, the issue before this court is whether a 1204 instruction should have been given based on the evidence in the case. And we're saying there was absolutely no evidence that a 1204 instruction should have been given. There's not. There's no record to preserve and suggest that a 1204 instruction should have been given. Absolutely not. None in the trial court below before Judge Mohr because she's the one who had to make the decision. And I would suggest that they need to make a record in order for a trial court to abuse his or her discretion. You have to let the judge call the balls and strikes, if you will. And that didn't happen. It didn't happen here. Now they complain about the subcontract, which was never offered in evidence or the proposal or whatever. And the crane, which is mentioned in the bid proposal, a crane, a tugger is a crane. According to Mr. Patton, as we cite, according to Mr. Patton, according to Mr. Talley, this was a crane bay. And according to defendants in their own post-trial motion, paragraph 37, they call the tugger a crane. And that's what the bid proposal said. A crane would be provided. And Mr. Talley, Jim Talley, said that's all we thought we were going to use. So the issue comes down to they drop a truss, which they choked. They choked themselves using a single train, a single choke, using the friction method. And their own expert, Mr. Burnett, said eventually that thing's going to fall because you need a positive connection. You need something like a nail. You could put a nail underneath these chokers and it would prevent it from slipping or toenail it. A lot of different positive ways in which you could have prevented this from happening. And this was their job. If you look at their subcontract, they were to provide the tools, equipment, labor, supervision. This was their job. Their job. It wasn't Mr. Reedy's job. He was only there to do signaling, period, period. And if you want to, and I know part of their discussion goes to somehow an argument that was made below regarding Mr. Jeff Talley's testimony regarding an external crane. Well, that's not an admission. This is about we represent a widow. Certainly she has no first-hand knowledge of what occurred. Mr. Bruce wasn't a witness, nor was he identified as a witness. This so-called admission was never marked, never offered up. Now for the last time in a Hail Mary pass, they want to suggest that this was an admission. We took a contradictory position. Mr. Powell, your time's up. I'm sorry, Your Honor. Thank you. Please record I'm Paul Esposito, and I represent United of Kentucky. We need to go back to the beginning, literally to the beginning of this trial. First day of trial, plaintiff presented two motions in limine. One motion in limine was to bar all evidence of the negligence of BMW. One motion in limine was to bar all evidence of the negligence of Midwest. And we objected. We objected on the grounds of 2-1117, which this court has ruled on and is not before this court anymore. And we objected on sole praximate cause grounds. The next day the court heard a hearing on the issue, and the court granted their motion, both on 2-1117 grounds and on sole praximate cause grounds. The court said, you know what? You, United, were in charge of this job, which we were. We were in charge of getting up the scaffolding. And so it cannot be possible that anyone else could be the sole praximate cause. Of course, there's a difference between control and in charge, as even the court recognized. So what the court's ruling, though, was at the very beginning, before opening statement, was that sole praximate cause was not going to be an issue. And when we raised the motion for reconsideration just before opening statement, the first things out of our mouth was sole praximate cause, and the court said, nope, I've ruled on that. We are not going there. We're over and done with. We get to the closing. So that issue had been foreclosed to us. We get to the jury instruction conference, and it wasn't quite like the point I just described to you. Our attorney said, as a result to protect our record, we're asking your honor to give 1204 with the second paragraph because we feel that there is evidence to support it. And the court, as I had ruled earlier, I think the case law prohibits me from emitting evidence of BMW and Midwest negligence in this case since they have settled in good faith. So as far as I know, there shouldn't be any evidence in the record of Midwest and BMW's negligence. The court excluded all the evidence. The court was not allowing us to go to the jury and tell the story that it's the conduct of BMW in Midwest that would, and plaintiff, and decedent, I should say, that was the sole praximate cause. And that's why we're here. We're here to deal with those issues. There's a lot of complaining about our post-trial motion, but there's a big difference between preservation and persuasion. Our post-trial motion is supposed to preserve. If we can persuade the trial judge to change her mind, wonderful. But it's supposed to preserve. And it doesn't take much under Brown v. Decatur. It just takes a simple, concise statement. And we made those statements. Volume 13, the post-trial motion, page 3173. The court committed prejudicial error by barring United from presenting evidence as to the negligence of the Midwest entities in BMW and by denying United's motion for reconsideration. The evidence regarding the fault of Midwest and BMW should have been admitted. Page 3174. United has been unconstitutionally deprived of its empty chair of defense. United contended in part that the negligence of Midwest BMW was the sole praximate cause of decedent's death. United was entitled to a jury trial on its defense. Under this court's rulings, United has been unconstitutionally denied a chance to offer an empty chair of defense. Page 3175. Furthermore, United was entitled to argue that those entities, BMW and Midwest, singly or in combination, were the sole praximate cause of decedent's death. As to the motion for JMOV prong of our post-trial motion, construing the evidence most favorably to plaintiff, including evidence that was made as part of offers of proof, the sole praximate cause of decedent's death was the negligence of decedent, the Midwest entities, and BMW. The new trial prong of the motion, the court committed prejudicial error by barring United from presenting evidence as to the negligence of the Midwest entities and BMW, and by denying United's motion for reconsideration. The evidence was relevant as to the issue of several liability under Section 21117. The evidence was also relevant as to United's empty chair sole praximate cause defense. Wasn't the deposition testimony of defendants expert available at the time you made your motion? Barnett? Certainly. As to what point, your honor? On the tugger, the tugger operator. Right. It was available. It wasn't, I mean, there was no expert testimony needed to decide how you, you know, stop a tugger. I mean, it's like how you stop a car. I thought your expert indicated that the trial court, that the operator or Midwest did anything wrong in operating the tugger. That's what the expert said. He didn't see anything, but that wasn't. But the trial court was aware of that when they then barred any evidence, as you said. When they barred evidence as to the actual operation of the tugger. In other words, the question was. But it wasn't the expert testimony before the trial court when that ruling was made. Oh, and the motions eliminated was brought before the court, yes. It was. Just going back, the point was, the point is that it was preserved. It was preserved even as to the instruction where we said that the evidence could reasonably be, that Midwest and BMW could reasonably be viewed as the sole proximate cause of decedent's death. There have been comments that the appellate court exceeded the mandate. In this court, in ruling, in setting forth a mandate, went to look at United's petition for rehearing. Here's what we said in the petition for rehearing. United was entitled to a new trial based upon the independent ground that it was wrongfully deprived of its sole proximate cause defense by the trial court's ruling barring United from putting on a sole proximate cause case involving the settling defendants, BMW, and the Midwest entities. Let me go back a little bit. Sure. Because I think my last question was directed more to Midwest. But didn't Barnett, in terms of BMW, in his deposition, says it would be more dangerous to lift the beam outside the plant? Barnett said it could be just as dangerous. And by that, what he was talking about is – With that admission, wouldn't you think that the trial court was correct in excluding the evidence? No. And here's the reason. Let's jump right to that. The external crane was really significant in this case because if the external crane had been made available, Mike Reedy, Eugene Jagadzinski, and Tony Panega, the Midwest employees, never would have been involved in this job. The external – it was supposed to come up from the outside to go in. The reason why those gentlemen became involved at all is because BMW didn't provide what it was contractually required to provide. And that was the external crane. So you dispute that it was physically impossible to have the external crane brought to that site? I thought the position of the plaintiff that they could not use an external crane because of the way the structures were set around.  In their response to the motion for summary judgment – which, by the way, the judge not only had, but read. So the judge is fully aware of the position of plaintiff as to the external crane. They say this. After saying that – okay. The crane – the external crane that Midwest obtained was located on the job site for many months. This is many months after the accident. They didn't bring it at the time of the accident. This evidence concerning BMW's responsibility to acquire a crane is uncontradicted. A number of witnesses have also testified that it was feasible to utilize this external crane in order to elevate the wooden trusses at issue here. Terry Ray, a project manager and superintendent of BMW, testified that he had inspected the job site where this work was going to be performed. He further testified that these wooden trusses could have been inserted from the outside of the building. This testimony is consistent with that of a number of other witnesses who all testified that the external crane could have been used to elevate these wooden trusses. And Barnett said that it could be more dangerous to lift the beams outside of the building. And Barnett said that in his deposition? Right. And if Barnett – if that testimony had been brought out by the plaintiff – which, by the way, the plaintiff didn't bring that testimony out at trial because the plaintiff worked successfully to exclude all evidence about the external crane. They didn't want that evidence to be heard. They didn't want the jury to decide whether it would be safer to have Mike Reedy standing where he was standing or to use an external crane because they didn't want the jury to hear about the external crane. That evidence never made it into the record. That's part of it. What is the function of experts in the case? Pardon? What is the function of experts in the case? Well, you and I have no disagreement if we're saying experts can disagree with what I have to say. What our position is is that's a jury question. That's the whole problem here. We weren't able to create a jury question in which they could have cross-examined Mr. Barnett, get him on the stand and say, well, hey, Barnett, what about this was what you said in your deposition? How does that apply in this case? Fine. Let him have that. But let him have that in front of the jury where the jury can now understand what is going on here. That's the problem in this case. The jury never understood because plaintiffs very successfully kept that information away from the jury. That was the story. There was a contract here. Plaintiff is now telling you. They told you in their reply brief. They're now telling you this is part of a bid proposal. If you go, Your Honors, and I urge you to go to our appendix, we have the contract there attached. It's attached at page 5. It says subcontract agreement. It says Exhibit C, time and material rates. The Exhibit C is the bid proposal. It's signed by the parties. And a bid proposal is significant. Let's go to it for just a second. Because a bid proposal says forklift and operator to be furnished by customer. The customer was BMW, as United Gedecky requires. This contract would have cost BMW a considerable more amount of money if United had to bring the contract. You can only imagine what it would cost to rent a crane. So as part of these rates, they attach this contract here, excuse me, they attach this bid proposal as part of the contract. It became incorporated into the contract. And that was part of it. And Planeth even recognizes that. If you go to page 15 of the appendix, the contracted issue between United Gedecky and BMW specifically refers to the use of the crane in an operator. This contract is the very contract that BMW relies upon in support of its motion for summary judgment. Where I got that contract that I attached was attached to BMW's motion for summary judgment. The contract states in relevant part crane and operator to be furnished by customers United Gedecky requires. The customer referred to in the contract is BMW. Thus the plain language of the contract requires BMW to furnish a crane. And they go on and after talking about some of those things I talked about, they say the above simple facts demonstrate that BMW is not entitled to summary judgment at all. Quite simply, no analysis of section 414 of the restatement or the corresponding case law is necessary where it is clear that BMW was responsible for leasing the external crane which would have prevented this tragedy from occurring. It was a huge factual issue that needed to be resolved in front of the jury. All those things about Professor Barnett and anything else they wanted to talk about the external crane. But that's what wasn't allowed. There's a good case to read on this proximate cause issue, particularly as it pertains to BMW. It's cited in our brief, not commented on in their brief, Garcia v. Wooten. It's a case that came down about a month. Garcia v. Wooten Construction. It's a case that came down about a month after this court's first decision. And what happened in Garcia v. Wooten is iron workers who had been allowed to use a crane to lift barrels of bolts were told by the general that they couldn't use this crane. And in doing the alternative process, Garcia was injured. And so the contractor moved for summary judgment, got summary judgment. The first district reversed and said, wait a second. You are in control of that crane, Mr. General Contractor. He couldn't do the work he wanted to do. And so there was that element of control there. And so then the contractor says, yeah, but Garcia's boss told him he should do it the way he ultimately did it. And the court said, that doesn't matter because from a proximate cause standpoint, Wooten was at the top of the chain. Wooten was the one that kept the crane from the use of the injured person. And that's what we're saying. As to the BMW, all that information, all that evidence should have gone to the jury. As to Midwest, here's what happened. Midwest sent over to unnecessary, untrained and unqualified, unsupervised people who had improper equipment and were not properly After the crane failed to show because of BMW's fault, we went to BMW and said, okay, what do we do now? BMW said, well, Midwest has a tugger. Maybe we could lift it with them. But they're going to have to provide the operator. So they went to Midwest, talked to a guy named Bill Hibbler. Hibbler said, we need an operator. We don't need three people. We needed one person, an operator. Hibbler said, okay. And he sends him a guy named Gene Jagadinsky. Jagadinsky doesn't want to operate the tugger. So he's with his co-workers, Pineda and Reedy, and they flip coins. Jagadinsky loses. Reedy says, let's all go. So Reedy and Jagadinsky and Pineda all show up and say, and Mike Reedy says, Mike Reedy now, says, hi, I'm from the safety committee and we're here to do signaling. And now we have these two extra guys that they don't need. There's no one there from Midwest who sent them to supervise. It's like me bringing my adult children in to help me in a job and expecting my employer to supervise them. Midwest doesn't have anyone to supervise these guys. The pieces start going up. They're going up uneventfully until Mike Reedy, who was untrained by his own admission of plainness, untrained, decides to move the choke point from the side where it was having the most resistance to the center. It starts going, a couple of these go up all right. And the last, the fatal one, what happens is somehow the chugger jerks. No one knows how. But the chugger jerks, the piece falls down. Mike Reedy, who was doing the tagline operation and signaling after he had told them to change the move, is standing under it. And unfortunately it comes down on him. They give him insufficient number of radios. He's signaling from a bad position. Jagadzinski and Panega, his own co-employees, testified that he could have signaled from a much safer position. And even Ralph Barnett said you should never be standing under a load. We tried to get in the Midwest rules. We made an offer of proof as to the Midwest rules.  But one of the Midwest rules specifically said that you cannot do two jobs at the same time. I think what happened, if you analyze this evidence, probably what happened here is Mike Reedy was holding this tagline, trying to steer this piece up. It's going up above him, lifting up. The tagline goes out of his hand. It's a 25-foot tagline. And he forgot to move away. And he forgot to move away at the very time that the piece was coming down. So there's plenty of evidence here as to both Midwest and as to BMW. The problem was we didn't have an instruction to relate this to. We didn't have an instruction that says if you can find, and we weren't asking for a 1205, and we didn't have to ask for a 1205. That's a point that was raised in their brief. The problem was we didn't have the ability, even with what evidence was admitted, to relate the evidence to the law, to the law of proximate cause that says the plaintiff has to prove it is our fault. We had evidence pointing directly to them, some of which we couldn't introduce, but evidence that certainly would have made the case for us, would have told our side of the story. And we couldn't introduce it. This court, when it sent this case back down pursuant to its mandate, was sending it down pursuant to a mandate to let us have our defense. We didn't get that defense. We were severely damaged. We couldn't tell our case. The court got the case back and it remanded for a new trial. It remanded for a new trial on all issues. The plaintiff didn't appeal that issue, and it was a proper exercise of the appellate court's power. When it looked at the issue in Mikulogic, this court remanded a case for a new trial on all issues. After finding that liability should be reversed in Nolan, this case remanded a case for a new trial on all issues on the sole proximate cause case, Nolan v. Weill McLean, even though damages had nowhere been raised. Counsel, I'm sorry about your time. Oh, I'm sorry. Okay, thank you. Counsel talks about a missed array. I tried the case, and Mr. Ray not only never testified, there was never any offer of proof of Mr. Ray, the BMW person who he claims now apparently said the crane could have been used. Well, that was not ever raised below with Judge Mulhern, so it's hard to say she excluded that evidence when the subject of his testimony never came up. So I don't know how the judge could have been in error, because it's an abuse of discretion standard. And clearly she didn't rule on that because Mr. Ray didn't testify. There's no offer of proof. There was no mention of his testimony and deposition years before. And I was mentioning that in terms of our response to summary judgment is not clearly an admission, because it doesn't qualify for admission under any law. This is our client's a widow. Mr. Bruce is not a witness. This was taking what Mr. Jeffrey Talley testified to, and that's what he said. Now, was that testimony competent? His brother said you couldn't use the external crane. Number two, the external crane was never argued on the issue of sole proximate cause, as I've already said. And if you look at the bid itself, the bid that they're saying is incorporated in the contract, the bid says they're to provide a crane. Well, if you look at paragraph 37 of their post-trial motion, they call this tugger is also called a crane. Mr. Jeffrey Talley called it a crane bay. Mr. Patton told the judge in Mr. Pinega's offer of proof that this tugger is a crane. Well, if you look at the four corners of the document, they provided a crane. They provided this tugger, which is a crane. And this is their document, their bid. It should be construed against them. A crane was provided. It's only the manner in which they rigged it which caused this occurrence. When you just talked about their story about Mr. Reedy putting the choker in the middle and this and that, that all came before the jury. They heard all that. They heard all this testimony about what Mr. Reedy allegedly did wrong. He couldn't respond to it. But in the statements they gave to their investigator, all right, the day after the occurrence, statements they gave to the OSHA investigator the day after the occurrence, they said every one of those taglines were the same. That's what they said. And if you look at my cross-examination, which we identify in the brief, each of them admitted their memory was better after the occurrence, and Mr. Reedy never changed the choke hold. Needless to say, all that testimony came in against the plaintiff, and he was found 35 percent at fault. In respect to Mr. Reedy, a 1204 instruction would be irrelevant because there would be no prejudice not giving the second paragraph, because he was not found at sole proximate cause. He was found less than 50 percent at fault. So in reference to him, it would not be germane nor prejudicial. In respect to Midwest and BMW, they didn't preserve this issue in any way. And counsel talks about Garcia case. Garcia is a case on which the general contractor not only was obligated to lease the crane, the general contractor did lease the crane and put it on the job site. And then before the job was done, the general contractor removed it. They removed it. And so they said that they had an obligation once they put it on the job site to exercise reasonable care. That's not this case. This case, they provided a crane pursuant to the bid requirements. This issue was not preserved below in any way. None of this evidence counsel cites, including Mr. Ray and others, was ever argued in the trial court. And the radios, as I said, the only issue they argued in motion to eliminate regarding sole proximate cause was about the radios, and that's nowhere in their post-trial motion. And if you look at when they said they may not offer proof, that was in plaintiff's case, and that was regarding Mr. Pinega, and the judge says you're going well beyond what counsel did by using one rule. I'm not going to allow it. So it was beyond the scope. Where in the defense case do they offer up? Because you can't, the defendant can't offer up exhibits in our case. They have to offer up exhibits in their case. They have to put on witnesses in their case. They never put any witness on it. Yes, Your Honor. If I understood Mr. Esposito's argument correctly, it was that they were precluded from presenting this based upon the initial motions in Lemonade. Would you respond to that? Well, but, Your Honor, they still have to make a record on it as to how it's relevant in the motions in Lemonade. They didn't argue the external crane went to sole proximate cause. They didn't argue the signaling, which actually came into evidence, went to sole proximate cause. They didn't argue that Chubber Bay went to sole proximate cause. All they argued in motions in Lemonade was about the radios, period. So you have to make an argument. It was excluded. Yes, but it was excluded, but it was never argued. All that the court excluded saying that indeed that the evidence is not coming in, but what evidence? All they talked about was argument. They made a blanket statement as they admit saying that the conduct of Midwest and BMW comes in on sole proximate cause. But where's their argument, Your Honor? There is no argument about specific evidence. Nowhere in this record before the trial judge. So how could they claim that this trial judge abused her discretion when they didn't make that argument at all? And they talk about Mr. Reedy. They didn't argue Mr. Reedy's testimony. They didn't put Mr. Reedy on their case in chief. They did not ask us to stipulate to Mr. Reedy's deposition as an offer of proof. This isn't, you can't preserve what's an argument made before another judge in respect to summary judgment. Now they want to claim for the first time, when we're in front of this court for the second time, that somehow these are all admissions. They never argued this below. If you look at our judicial admissions of Mr. Tutali's, it had to do with their deposition testimonies, concrete facts within their knowledge. They never offered this up as a so-called admission before. This is the first time on appeal that they offer any arguments. And clearly arguments of counsel, as the Civil Practice Act allows, we can plead hypothetically in the alternative. No matter how weak, no matter how weak, we can argue it, and they didn't preserve it. It's nowhere in our post-trial motion do they argue that any of these issues went to sole proximate cause. And if you look at the barricading issue they talk about, they do not talk about any rule specifically that Midwest or Commonwealth Edison had regarding barricading. There's no rule they cite to in respect to any of the rules. Now they're talking about supervision and operating two things at once. Where do they identify a rule that Midwest or Commonwealth Edison had, a specific rule and what the rule said? Nowhere in this trial record do they identify any of the rules. All they say is we're marking this as Exhibit, Defendant's Exhibit 1A, with a sidebar, Mr. Penegan. And the judge said, are you offering the whole rule book? And they said, yes, the whole rule book, 300 pages. That's no way to preserve anything. That's no way to have a judge rule on evidence. And the barricading rule, that didn't even apply. The barricading rule, certainly this court didn't abuse her discretion when they didn't even give her the rule. And now for the first time on appeal, they want to suggest somehow the barricading issue is applicable or blocking, they call it. Where do they say that that went to the issue of sole proximate cause before advancing on appeal? Nowhere. Nowhere. In this entire court record, they do not say the barricading, the external crane, the chugger operator, that came in, but not that he was negligent because Mr. Barnett admitted that he wasn't negligent. He was very prudent. And now they want to say, well, it's the inherent chugger operation itself. Well, that's a 1205 instruction, not a 1204 instruction. And now they want to, for the first time, advance apparently a 1205 instruction. But below, they can't now claim it's error for the trial judge. She abused her discretion when they don't even offer the subcontract and the bid into evidence. They don't offer one witness, even an offer of proof in their case. So is your position that in addition to arguing against the motion limiting, it would have been incumbent upon United to continue to offer evidence of the sole proximate cause with specificity in order to adequately preserve this issue? Well, that's what Brown calls for, Your Honor. I just want to make sure. Yes, Brown does call for that. And counsel missed that point because he said that they have to be specific, or at least in particular, and Brown says in particular talk about the evidence or the law. You have to particularly state the evidence in the law. You just can't particularly state all these issues and not nowhere, nowhere below do they talk about any of these issues going to sole proximate cause. It wasn't preserved. And then to talk about damages, this case was affirmed by the appellate court saying they waived it. This court determined they waived it. They filed for rehearing. So three times they tried to revisit the damage issue, and this court denied that on rehearing. So in respect to damages, it's clearly been waived three times. There's been three rulings on that. And I would respectfully request that this court affirm the trial court below and determine that she did not abuse her discretion when she was never asked to exercise that discretion. Thank you. Thank you, counsel. Thank you, Your Honor. Case number 108-910.